I'm David Forse on behalf of the appellant Jan Wroncy, and if I sound disjointed, it's because of a computer malfunction. OK. Fair enough. And also perhaps because the record in this case and what happened below is, I think anyone would agree, somewhat disjointed and unusual. I've been given 10 minutes total for argument on this case, and based on that, I'm not going to repeat very much that's in my brief. I would simply suggest that both the procedural and the substantive problems with this judgment in my, I submit, are each independently and certainly together adequate to require a reversal. How would you, to help focus at least from my standpoint, how would you respond to the ruling on causation, even assuming that the court confused porphyria with a more generic disorder? There's still the issue of causation. It's an interesting sort of law school exam question. How do you rule out or focus on sorting out the multiple causes, diesel fumes on the highway or cosmetics that you may have applied? How does one ever tie it down to a particular incident of spraying pesticide? I think you have to look at it, Your Honor, in terms of scientific probabilities. And that could have been done with the evidence that Ms. Ronsi did submit and submit timely from the experts, including Dr. Engelking, the chemist and chemistry expert on how these particular substances in the herbicides are aerosolized and how long they remained in the air. Well, that just shows presence. I guess maybe you could point us to linking or linkage testimony. That's what the same question. Well, both both Dr. Elliott and Dr. Morton gave their opinions again after the judge had already made his conclusion that he wasn't going to consider that evidence and didn't. But they had both given their expert opinions that it was exposures to these substances that caused the specific incidences of enhanced disability that the plaintiff alleged in her complaint. As far as distinguished from any other source, were they prepared to opine? I didn't remember that, that they were prepared to opine that there was a direct but for causation. Well, Dr. Elliott did. And I believe that Dr. Morton's supplemental declaration is sufficient to create a genuine issue of material fact, whether it's sufficient to convince a fact finder is another matter. We're in Dr. Elliott. He simply says he was not trying to be argumentative. I'm really trying to. This is an interesting case. But I'm sympathetic if someone is subject to multiple causes of this. But in order to tag who's responsible, where is it in Dr. Elliott that says that it had to be this particular source when there are numerous sources? Well, I don't believe Dr. Elliott said it had to be. It just it was his opinion. And as I try to recall, looking in the blue brief, because I said, well, maybe you could show I'm looking at the supplemental declaration of Dr. And I'm just trying to find the causation statements. So. So. When he does say, well, he first declaration, he says, I believe, travel on the roads. And I believe that's where the other paragraph I'm looking at or I was referring to comes to its paragraph 15, which is on the R-25. And it doesn't. What it states that what it says is the fact that Mr. Joel applies herbicides according to certain protocols does not mean such an application will not result in a potentially medical harmful exposure. And basically, he's not ruling out other potential exposures. I guess. So that's the question. Leaving aside even the scientific part, does he make the reasonable probability that it's this particular substances that is causing her problem? Your Honor, I guess my answer to that question is whether or not he does. There was no contention by the movement for summary judgment that her problems were caused by anything else. And she didn't have a burden. Seems to me to to present evidence on that issue when it was not raised by the movement for summary. And it simply was. OK. Could I bring up this procedural? You briefed the problem of you did not consent to the consolidation or the combining of two cases and the crossover of evidence from one case to the other. And your point seems to be well taken. This was done without your consent. And it may have been an improper employment of judicial discretion. We don't have. We haven't decided that yet. Not have to. But how were you prejudiced? What what happened because of the consolidation that hurt your case? What happened was that all of the scientific information that Judge Coffin did find reliable was the argument by the defendant in the other case about the expert opinions in that other case. And they cross examined one another's experts. That happened approximately several months before this consolidation. But everyone calls it. I don't know what one calls what happened. Were you able to participate or did you hear? Or we didn't even know the case. We didn't know what's going on. Did not even know the case existed when those depositions were taken and those declarations were filed. Well, now that you've read those exhibits and depositions and so forth, how did they prejudice your client? Well, they prejudice my client in the sense that the the vagueness of or the supposed scientific inconsistencies or deficiencies in Mr. Gabbard's evidence simply cannot be extended to this to this plaintiff's evidence. For example, Dr. Ingle King's chemical dispersal testimony, it seems to me is the best example of that. There was no explanation at all as far as I can tell in the Gabbard case of how these substances that allegedly triggered Mr. Gabbard's alleged condition, which may in fact not be recognized by medical science to exist. But there was no explanation as to how they would be in the air to be inhaled or ingested by him. And was there in your case? Yes, there was. Now, how did you have measurements of like air quality control engineers going out and measuring drift and density of pesticide vapors? Graduates, a graduate student performed a dissertation study of that in the same general area as Ms. Lane County under the supervision of Dr. Ingle pretty big county. It's about 50 miles long, 80 miles wide. South east of Eugene is where the study was performed at all. The only the only variable that would be different from where the study location was, as opposed to the actual places where she alleged she had passed through and inhaled the substances would be. Would be whether or the substances identified. Yes. By their chemical nomenclature and their propensity to drift. Yes. Yes. And that was all in your efforts. So how did it hurt you that the other guy's evidence maybe wasn't quite as favorable? Well, I guess it hurt us because the judge assumed that any defect that was applicable to Mr. Gabbard's evidence was automatically applicable to Ms. Rossi's evidence, and he did not consider Dr. Ingle King's declaration. It's just not there. But but Ingle King didn't make a causation finding. No. He explained how the substance would be in the air to support the causation finding by the medical experts. And once again, the problem seems to me, the problem with looking at that issue now is that the motion for summary judgment did not dispute the fact that she inhaled those substances. Do you want to save your one second for rebuttal? Now down to zero. We'll we'll give you some time for rebuttal. I appreciate that. May it please the court. Counsel Dan Casey for the Department of Transportation. I'd like to start off by just responding to some of the comments and the opening argument. Could you address right off the bat whether the department actually raids but for causation? Yes. That's the first. There was two bases that the department moved for somebody. First was but for causation. And I can quote from. This is at the plaintiff's excerpt of record page 14. This is defendants. Summary judgment motion for defendant argues, quote, plaintiff can show no credible or scientifically reliable evidence that any chemical herbicide applied by defendant to roadways it manages causes any disabling condition suffered by plaintiff. That was the thrust of the main point of which the state sought summary judgment is that there are, according to plaintiff's own evidence, a myriad of chemicals out there which could have triggered the reaction she claims to have or excuse me, that could have triggered the reaction from the condition that she claims to have. And she didn't she offered nothing to narrow that down other than her own basically her own self diagnosis. Now, just so I'm clear, that was an assertion that even if she has a legitimate reaction to chemicals, there was no evidence that this particular chemical causes it generally causes preferia or that she actually had. In fact, assuming you were to lose on on an expert battle of experts that your herbicides could cause was the issue joined on whether or not. If so, these herbicides were at the place at the time in the location. And therefore, it's and she drove in that area. That was also if you read the district court's order, that is the alternative basis. Assuming plaintiff is correct and she wins on the expert testament issue that the trial that the trial that the magistrate should have let in the declarations from her from her experts. OK. That says what? What? Something about M.C.S. or generally. But the alternative basis, which was raised in the defendant's motion for summary judgment in the supporting memorandum. And at the hearing, the summary judgment hearing quoted in the beginning of the state's or excuse me, defendant's supplemental excerpt of record, the state did indeed raise that issue. And that was the alternative basis in the last two pages, two or three pages of the magistrate's order where it says, let's put let's put Daubert and the Gabbard case and all of this aside, because that seems to be the main point about which plaintiff is complaining. Let's put that aside. And it still hasn't carried the burden of causation. Well, no, I understand what the magistrate judge said. I've got that. I'm trying to understand whether, in fact, the way this proceeding arose because it was confusing, whether, in fact, there was a fair opportunity on the part of Ms. Ronci to address the specific but-for causation issue. In response, Your Honor, she did. And, again, I would cite the court to ER 14, which is defendant's motion for summary judgment and the supplemental, excuse me, the supporting memorandum in support of the motion for summary judgment. And I can quote from, I'm sorry, I don't have the exact page number, but it is in there, Your Honor. There were two bases that the defendant moved for summary judgment. One was she can't show causation, that what she is allegedly suffering is from anything that the defendant put out on the road. The second one was that her accommodation she's requesting, which is chemical-free maintenance of all the roads that the Department of When was Ms. Ronci made aware of your motion that you cited? It was filed, Your Honor, on March 13, 2002. And she got that right off the bat? Yes, Your Honor. This consolidation issue? She was pro se at that time, and we have a certificate of service from our trial counsel that it was served on Ms. Ronci. We've never heard from her that she has not received that. One question I have, then, I'm looking at Dr. Morton's declaration. Yes, Your Honor. He goes through a variety of stuff about the disease and pesticides and then how it affects her ability of her body to process these. And then at the end he says that without protection from exposure to this known trigger, she could have a fatal outcome. Why wouldn't that be a sufficient foundation to at least raise an issue of fact on that point? Because we need to take a step back and say, well, is the reaction that she had in the first place the result of defendant's chemicals? If it's not, she could be out on the roadway and doused with defendant's chemicals. And if she doesn't have a reaction, it won't be fatal. And that's the flaw in defendant's case, is that there are so many chemicals. So she has to be dead in order to survive? No, no, no, Your Honor. No, no. She just has to prove some sort of a link. Basically what we have here is plain opinion to her doctors and saying, I drove on the freeway on the day that I think they sprayed and I feel sick. And the doctor said, oh, MCS or porphyria or whatever it is. They said, well, it must have been the chemicals that made you sick. And I would, if I could, point the court to a colic that occurred. So let me just ask you, do you think that she needs an opinion then that would say more probably than not, although she's allergic to many chemicals, the DOT's chemicals, not these other ones, were the cause? And that's what's missing. Something along those lines. I'm not saying that that's sufficient, Your Honor, but at least that would be more than what we have here. And we don't even have that. I'm not sure I understand what you're focusing on. You suggest that the issue is whether or not herbicides, that issue, could cause. And you're saying there's a failure proof on that. But the magistrate judge doesn't seem to rationalize it that way. What he says is, excepting that it does, there are lots of other things that can as well, and it hasn't been isolated. That's an entirely different issue. And I agree with your characterization. And if I'm not clear, I apologize. On the alternative basis, even if plaintiff can prove in general the chemicals the defendant uses in general causes this reaction, she didn't prove it caused a reaction in herb. Well, I'm coming back to Judge McKeown's question. How would you expect someone to prove that in a transitory situation? If I'm driving down the highway, let's suppose the following, that I live in a certain location, rural location. I get up every morning. I go through a routine. It's, you know, roughly, it's not, you know, not robotic. But I can go through, in a sense of a regression analysis, I can reduce substantially, if not entirely, the probable causes. Because I'm, you know, I put on the same cosmetics. I drive the same route. And two days ago, ODT sprayed the highway. And that's happened five times now. And every time they spray and I go past that area on the highway, sure, there are diesel trucks out there. But I don't get it on the days when I'm driving the highway and there are diesel trucks. Is that what has to be proved? I don't know, Your Honor, because, okay, if the plaintiff is saying, well, they sprayed DDT, and that's just pulling something out, or Roundup on that day. Having her come in and saying, well, they sprayed Roundup, I got sick, therefore Roundup made me sick, is not the only way. She could go get some Roundup, bring it to her doctor, and have herself tested to say, how does she react to Roundup? Well, see, that's why you're confusing things. For me, anyway, the magistrate judge seems to accept as a triable issue, or at least as a debatable issue, that she does, in fact, suffer from that. But his thing is it could be either that or it could be diesel fuel. That's right, Your Honor. Well, that's, you know, so he comes in and says, look, I'm allergic to Roundup. And I've blistered all over. And he says, wait a minute, and he still says, yeah, but you could have had it from diesel fuel, too. But she knows she's allergic to Roundup, other than saying, well, I had tested her, I was in my garage, and I spilled some on you. That's the point, Your Honor. I'm sorry I'm not getting your, I'm obviously not answering your question. No, I'm just trying to appreciate what the magistrate judge seems to go off on. Well, the magistrate judge, I think what he was saying is even assuming that she's allergic to Roundup. Even assuming she's allergic to Roundup. Has she proven that? I thought he was saying even assuming she's allergic to Roundup, we don't know that it was Roundup and not something else. That's right. Like diesel fuel or cosmetics that were causing the problem. That's how I read the magistrate. And that's, yes. So I come back to my hypothetical then. I'm allergic to Roundup, and I'm allergic to diesel fuel, potentially. Now, I come back and I demonstrate that I've driven past this point numerous times, and the only time I get this allergic reaction is contemporaneous with spraying of herbicides. Is that enough to establish but-for causation? I'm out of time, Your Honor, if I could. No, you can definitely answer the question. The answer to that would be no, because it is speculative. It gets to the point of on the fine line of how much is enough or how much is not enough, and it's the State's position that in light of the other chemicals that are out there, that defendant, excuse me, that plaintiff admitted could cause her reaction, that that is speculative to say, because it's allowing the jury to say, okay, we've got 1,000 chemicals out there or even two. Now, you guess which one. Well, no, they're not guessing. They're sort of just doing a regression. You know, you try and figure out on it. But we don't have that, Your Honor. Well, I know we don't have here. What you just described, the regression I go through every day, it's only these days that they spray, that's not in the record. If we had that, maybe, maybe- That was my question. Okay, yes, maybe that would be enough, but we don't have that, Your Honor. Could I ask you to respond to the procedural point of combining these two cases and evidence coming in in the Gabbard case, which Ronci now says might have caused the judge to treat her evidence in a way that was, so it was less credible and had less probative value in her case because opinions that the trial judge formed in hearing the other case, which Ronci didn't have an opportunity to cross-examine or respond to. Now, how do you respond to their point that it was prejudicial to stir these two cases together and then treat them as if it was just one trial? The answer to that, Your Honor, is the choice that Plaintiff had here on the record in what she did submit and what she did not submit was using the Gabbard evidence or using no evidence. And that's the point. The magistrate was trying to help this woman get past the Gabbard issue to at least survive that. She submitted no evidence on the general scientific theory of MCS syndrome. Was she still pro se at that time? Not at the time. Okay, when the case was consolidated, yes. The magistrate sent out an order in May of 2002 and said, in six weeks I'm having a hearing and I'm going to hear this case with Gabbard and Plaintiff can submit any briefing or argument before or during the hearing and if she doesn't, I am going to decide this case with Gabbard. And specifically the court said in that notice that it considered Plaintiff's case to share a common issue with Gabbard, Gabbard specifically, whether MCS syndrome is a recognized disability under the ADA. Six weeks later, on June 24th, when that hearing occurred, Plaintiff shows up and she now has counsel. And at that hearing, the magistrate, again, from defendants' attorneys' arguments and from the magistrate's very pointed questions, that Gabbard is an issue in this case. The magistrate says, on SCR, I'm just citing the court, the pages, SCR pages 8, 16, 17, 42A, 45, and 46, the magistrate asks specific questions of Plaintiff's counsel, saying, well, how does this, what you're saying to me, satisfy Gabbard? That can't get by Gabbard. That's not scientifically reliable evidence. Plaintiff had notice then. Then the magistrate says, okay, you didn't bring your evidence to court on the summary judgment hearing. There was a representation that Plaintiff had two declarations that were not signed. The magistrate leaves the record open for two more weeks, Your Honor, and says, okay, let's see what you get in. What Plaintiff submitted eventually from Drs. Morton and Dr. Elliott, as explained in the red brief, did not distinguish her condition of porphyria from MCS. So basically what we have is Plaintiff is coming in and saying, my claim is different than MCS, but my evidence shows it's the same. So the magistrate is looking at that, saying, well, I still have to get past, I can't get to the merits of Plaintiff's summary judgment unless I get past the Dalbert on disability. You've answered my question. Thank you. I appreciate the opportunity for a couple more minutes. Yes, and this is really the heart of both cases. Why don't you take a couple minutes and rebuttal. All right. I appreciate that. First, with regard to Goodwin's question, the Plaintiff in this case was pro se until the appeal was filed. She did retain me to appear for her at that single hearing. But she remained pro se, and she got notices as pro se, and she submitted the supplemental materials as pro se litigant. She wanted an opportunity to have her case argued in the court and hired me to do that. But ER 18, and it's set out again at page six of the blue brief, has the factual allegations of the motion for summary judgment that are relevant to this case. Number eight, the defendant asserts as a fact that multiple chemical sensitivities is not recognized as a diagnosis in the International Classification of Diseases, and Dr. Burton, defendant's expert, has had occasion to research multiple chemical sensitivities and does not believe it to be a valid diagnosis. Multiple chemical sensitivities is not a diagnosis recognized by the American Medical Association. And we know that Dr. Burton actually testified, their expert, that porphyria is such a recognized disease. Then number nine of the factual allegations is, in Dr. Burton's opinion, herbicides sprayed by ODOT approximately two miles from Ronsi's home would have no impact on porphyria, even if Ronsi actually has porphyria. The appropriate use of pesticides is not linked to human illness. Now, that was the defense expert's opinion. That is the statement of fact upon which the defendant based his motion for summary judgment in the concise statement of material fact. Well, you still haven't pointed out what evidence you had that this spray caused her symptoms to flare up, other than her ipsy-dixit, that she would have these symptoms when she went down this road. And I agree with that, Your Honor. And I again contend that when the allegation of fact by the defendant was that the pesticides did not cause impacts on her porphyria when it was sprayed two miles from her home did not raise a genuine issue of material fact as to what happened when she actually passed physically through the spray, which is what Dr. Engelking's declaration is about. Had they stated in their motion for summary judgment that there is no genuine issue of material fact, but that for an individual with porphyria to pass through these substances when they're aerosolized would not affect her or they did not affect this plaintiff, I'm sure she would have responded, at least I would have advised her to, with her own declarations and declarations of her experts to the contrary. But that contention was not made. What was disputed was whether if they're sprayed two miles from her home and she never leaves her home, whether they would affect her. And she doesn't dispute that she has no evidence that they would, although she may believe it. But what her contention was in the complaint was that she physically went through the pesticides and that that caused her to have reactions. What was her evidence of the nature and quality and volume of this aerosolization of this herbicide? Well, that's Dr. Engelking's declaration. And it's also was undisputed by the state that they had sprayed the specific chemicals she alleged at the specific times and places that she they didn't dispute that. So Dr. Engelking goes and describes how that material aerosolizes and how it stays in the air. And then Dr. Morton and Dr. Elliott say that she is sensitive to suffering potentially fatal reactions if she inhales this stuff when it's aerosolized. Thank you. Thank you. The case of Ronci versus the Oregon Department of Transportation is submitted. We will now hear argument in a related case, Ronci versus Lane County. You can come back up here.
judges: Goodwin, McKeown, Fisher